UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT P. GRIMALDI,

                              Plaintiff,

        v.                                        6:04-CV-999
                                                            (J. Kahn)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

ROBERT P. GRIMALDI
Plaintiff, *Pro Se*

GLENN T. SUDDABY                 WILLIAM H. PEASE
United States Attorney for the        Assistant U.S. Attorney
 Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

REPORT-RECOMMENDATION

     This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

The plaintiff is presently receiving disability insurance benefits and has been receiving those benefits for several years (Administrative Transcript ("T") at (12 ).  The present case involves a reopening of a prior claim under *Stieberger v. Sullivan,* 792 F. Supp. 1376 (S.D.N.Y. 1992), *as modified,* 801 F. Supp. 1079 (S.D.N.Y. 1992).

Plaintiff first applied for disability insurance benefits on January 2, 1981 alleging disability due to a back condition.  (T. 46, 61).  Plaintiff's claim was denied through the hearing level.  (T. 19-20, 12).  Plaintiff requested review by the Appeals Council but that request was denied on March 15, 1982, and the hearing decision became the final decision of the Commissioner.  (T. 12).

Plaintiff filed another application for disability insurance benefits on December 15, 1993 alleging disability since February 2, 1993 due to back and neck injuries.  (T. 12, 40, 43).  His claim was denied initially and plaintiff requested a hearing before a Administrative Law Judge.  On March 23, 1995, the ALJ found that plaintiff was entitled to disability benefits.  In addition, since plaintiff's 1981claim involved a determination of non-severity of his alleged impairment, he was entitled to re-evaluation pursuant to *Dixon v. Shalala,* 54 F.3d 1019 (2d Cir. 1995).  (T. 47-8, 58-9, 14).

On March 11, 2003, plaintiff appeared with counsel and testified at a hearing before ALJ Verner R. Love via teleconference. (T. 160-174). ALJ Love found that the plaintiff was not entitled to disability benefits for any time prior to February 2, 1993. The ALJ specifically considered the entire period "that could possibly be under review, extending back to the claimant's original application, in January 1981." (T. 14). The Appeals Council denied plaintiff's request for review on August 5, 2004. (T. 3-5). Plaintiff commenced this action *Pro Se* on August 23, 2004.

## CONTENTIONS

The plaintiff did not submit a brief in support of his position, and this court ordered the Commissioner to file a brief in support of her position. (Dkt. # 4). The court will assume that plaintiff is arguing that his denial of disability insurance benefits is not supported by substantial evidence in the record.

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

This court adopts the facts contained in the Commissioner's Brief on pages 3 and 4 under the heading "Testimonial, Vocational and Other Evidence".

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [he] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [his] physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [him] disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not

4

>have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 1. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.

1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2. Medical Evidence

The record contains extensive Office Notes from Dr. Samuel Rubino dated between late 1976 and 1994. (T. 91-103). During the late 1970's, plaintiff visited Dr. Rubino because of slip and fall while working. (T. 91). Plaintiff was diagnosed as having a fractured right rib for which Dr. Rubino recommended analgesics and rest. (T. 91). During July of 1977, plaintiff reported an automobile accident and Dr. Rubino diagnosed plaintiff as having a cervical sprain. (T. 91).

The next year, during September of 1978, Dr. Rubino diagnosed a chronic lumbosacral sprain and recommended analgesics and physical therapy. The Note specifying the lumbosacral sprain appears to be in different handwriting than the remainder of the Office Notes for that visit. Many of Dr. Rubino's entries are barely legible, yet the treatment and plans for the office visits appear to be much more legible and give insight into the reason for plaintiff's visits to Dr. Rubino.

Dr. Rubino's Office Notes for June of 1980 do not appear to have any entries for back problems, and Dr. Rubino treated plaintiff for high blood pressure, heartburn, occasional diarrhea and problems that do not appear to involve plaintiff's back. (T. 93-95). Dr. Rubino continued to treat plaintiff for many years after the late 1980's, and plaintiff's medications appear to be the same as in the early 1980's, including heart medication, anti-diarrheal medication, and medication for gastric problems.

Plaintiff was apparently hospitalized between February 13, 1981 and March 2, 1981 because of right side and back pain. (T. 22). Plaintiff's condition improved and the Notes from a State Agency medical consultant appear to state that plaintiff had no neurological deficits, had intact sensation, and had improved range of motion in his lumbar and cervical spine. (T. 22).

The record contains other Office Notes named "Progress Notes" from what appears to be Dr. James Cooley. (T. 112-127). Although these records begin in 1994 and end in late 1997, some of the entries in Dr. Cooley's records cast considerable doubt about plaintiff's complaints of disabling back pain.

During April of 1994, plaintiff reported to Dr. Cooley that he reinjured his back in January or February of 1994 and "it bothers [him] much of the time". (T. 112). Dr. Cooley did not believe that plaintiff's back was totally disabling since Dr. Cooley specifically stated in his records that he told plaintiff "that his chances of getting it [Social Security Disability] are very small." (T. 113). Just one week later, Dr. Cooley's Notes state that he told plaintiff that "he doesn't have enough [backaches or back problems] to get disability." (T. 113). Another entry just five days later during May of 1994 states that Dr. Cooley refused to write a prescription for pain pills which were requested by plaintiff's **wife.** (T. 113). Dr. Cooley's Notes contain similar statements regarding plaintiff's or plaintiff's wife's requests for him to write notes about plaintiff's disability. (T. 115, 116). Apparently, Dr. Cooley did not write any such note although he did diagnose plaintiff in 1996 with discogenic disease. (T. 120).

The record contains very little, if any, evidence that plaintiff had serious or severe back problems preventing him from working since the Notes from Dr.

Rubino, who was treating plaintiff during the early, mid and late 1980's, do not contain any such entries except for one entry during 1978 diagnosing a chronic lumbosacral strain. (T. 92).

During mid 1994, plaintiff's wife telephoned Dr. Cooley to tell him that plaintiff's wife's lawyer suggested an orthopedic doctor for plaintiff to visit. That orthopedic physician was Dr. Gregory Shankman. (T. 113). The record does contain some Notes from "GBS", which appears to be Dr. Gregory Shankman. (T. 138-141). These records cover a period of approximately one year from March of 2000 through March of 2001. (T. 138-141). These visits are **after** plaintiff began receiving disability benefits in February of 1993. (T. 12). They are irrelevant to the claim in this case.

### 3. The ALJ's Decision is Supported By Substantial Evidence in the Record

The ALJ evaluated the medical evidence and found that plaintiff had performed work between 1986 and 1992, including several years with substantial earnings: the year 1985 with earnings of approximately $4,000.00; the year 1991 with earnings of approximately $5,400.00; and the year 1992 with earnings of approximately $9,100.00. (T. 142). During 1986, 1987, 1988, and 1989, plaintiff worked and earned lesser amounts of approximately $2,200.00 in 1986, $1,900.00

in 1987, $2,300.00 in 1988, and $1,500.00 in 1989. (T. 142). The ALJ specifically notes that plaintiff's attorney attempted to locate and contact physicians that plaintiff may have visited during the early, mid and late 1980's, but no records were obtained. In addition, the administrative record shows that the Social Security Administration made an independent request for records and contacted six physicians, some of whom did respond to their requests such as Dr. Gregory Shankman, Dr. Samuel Rubino, and Dr. James Cooley. (T. 89).

The ALJ properly noted that Dr. Rubino's records make no reference to functional limitations because of severe or disabling back problems. (T. 16). The ALJ noted that plaintiff did not produce any records and did not testify about medical conditions or medical treatment that would support a conclusion of inability to perform substantial gainful activity during the period in question. (T. 16).

The record fully supports the Administrative Law Judge's decision, and therefore, the Commissioner's decision that plaintiff was not under a disability between 1981 and 1993 is supported by substantial evidence and should be affirmed.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 21, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge